## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LEVANCE WILLIAMS**                                                                 **CIVIL ACTION**

**VERSUS**                                                                                      **NO. 14-1914**

**DARRELL VANNOY, WARDEN**                                             **SECTION "N"(2)**

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. <u>See</u> 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.     FACTUAL BACKGROUND

The petitioner, Levance Williams, is a convicted inmate currently incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[2]  On March 10, 2010, Williams was charged by bill of information in Jefferson Parish with one count of carjacking, one count of resisting arrest by use or threat of violence and one count of possession of cocaine.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the relevant facts of the case as determined at trial as follows:

> On February 5, 2010, at 9:30 p.m., Stephanie Jefferson, a security guard and former correctional officer, picked up her son, Stephen, from work. Stephen and his thirteen-year-old brother were sitting in the back seat, and their six-year-old sister was sitting in the front passenger seat.  Ms. Jefferson then drove to her mother's house on Deacon Street in Avondale to drop off Stephen.  When they arrived, she and Stephen exited the car, after which she saw Defendant, whom she knew from the neighborhood as "Bubba," standing behind her father's car.  Defendant asked Ms. Jefferson if he could use her cell phone to make a phone call, so she gave the cell phone to him.
>
> Ms. Jefferson and Stephen continued to walk to the front door so Stephen could go into the house, and Defendant followed them.  Defendant asked Ms. Jefferson if her brother, Ronnie, was home, and she said, "No."  At that point, Defendant started acting very strangely and running around like somebody was chasing him.  Defendant said that somebody was coming and somebody was running behind him, and he started running around the car.  Ms. Jefferson was very afraid because she did not know what Defendant was doing.  She and Stephen walked back down the driveway, but Defendant met her at the back of the car.
>
> Ms. Jefferson tried to get into the car, but Defendant got between the driver side door and Ms. Jefferson.  She then got into the car, and Defendant jumped in the car with her.  Defendant straddled Ms. Jefferson with his chest

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 3 of 4, Bill of Information, 3/10/10.

facing hers, and they began to struggle.  Stephen got out of the car and tried to pull Ms. Jefferson away from Defendant.  Ms. Jefferson told Stephen to call 911.  Stephen tried, but he could not get through; so, he went next door and then across the street to use the neighbor's phone where he finally got through to 911.

At that same time, Ms. Jefferson was still struggling and trying to get Defendant off of her and out of the car.  She kept kicking the door open so Defendant could not shut it, and Defendant began choking her.  During the struggle, Defendant landed on Ms. Jefferson's six-year-old daughter, who was very scared.  At that point, Ms. Jefferson told Defendant to "just take the car and just go."  Defendant then got up off of Ms. Jefferson, and Ms. Jefferson grabbed her young daughter and ran inside of her parent's home. Her daughter vomited, and Ms. Jefferson called 911.

In the meantime, Stephen saw Defendant back up out of the driveway, drive down the street approximately 15 yards, and run into a light pole. Afterward, Defendant went into the house across the street from where he hit the light pole.  Deputy Rhonda Goff of the Jefferson Parish Sheriff's Office (JPSO) arrived, and Stephen directed her to the house at 105 Deacon Street where Defendant had entered.  She called for backup, and five minutes later, JPSO Deputy Marc Macaluso arrived at the scene.

Deputy Macaluso found an open side door. When he looked into the residence, he saw Defendant fighting with a younger black male, and there was also an older black male in the same room.  The deputy entered the house, drew his side arm, and Defendant fled down the hallway.  Deputy Macaluso ran down the hallway, and Defendant met him head-on running back, trying to get out of the hallway, at which time the deputy tackled Defendant, who landed on his stomach.

The deputy got on the lower portion of Defendant's back, and Defendant struggled briefly.  Defendant swung his arms, and Deputy Goff assisted Deputy Macaluso in handcuffing Defendant.  Deputy Macaluso patted down Defendant but did not locate any weapons or contraband, and he placed Defendant in the rear seat of his police unit.  Deputy Goff brought Ms. Jefferson and Stephen to the scene, where they positively identified Defendant as the perpetrator.

At some point, a transport unit came to take Defendant away.  As Deputy Macaluso was removing Defendant from the back of the police unit, he saw on the back floorboard a large piece of off-white rock-like substance, which he believed to be crack cocaine.  When he took Defendant out, he noticed several more pieces.  Deputy Macaluso testified that when he was assigned his unit on that day, he conducted a visual inspection of the back seat,

3

and he actually removed the rear seat to look inside, but he did not observe anything unusual. He further testified that defendant was the first person who was arrested and placed in the back of his police unit that day.

Thomas Angelica, an expert forensic scientist, testified that the substances found on the floorboard tested positive for cocaine.

State v. Williams, 88 So.3d 1102, 1106-08 (La. App. 5th Cir. 2012); State Record Volume 4 of 4, Louisiana Fifth Circuit Court of Appeal Opinion, 11-KA-427, pages 3-5, February 28, 2012.

Williams was tried before a jury on August 31, 2010, and found guilty on each count.[4]  At an September 27, 2010, hearing, the state trial court sentenced Williams to serve concurrent sentences of twenty (20) years in prison at hard labor without benefit of parole, probation or suspension of sentence for carjacking; three (3) years at hard labor for resisting an officer; and five (5) years at hard labor for possession of cocaine.[5]

At a March 4, 2011, hearing on the State's multiple offender bill, the state trial court adjudicated Williams a third felony offender, vacated the carjacking sentence and resentenced Williams on that count to serve forty (40) years at hard labor without benefit of probation or suspension of sentence.[6]

---

[4]St. Rec. Vol. 3 of 4, Trial Minutes, 8/31/10; Jury Verdict, 8/31/10; Trial Transcript, 8/31/10.

[5]St. Rec. Vol. 3 of 4, Sentencing Minutes, 9/17/10; Sentencing Transcript, 9/17/10.

[6]St. Rec. Vol. 3 of 4, Multiple Offender Sentencing Minutes, 3/4/11; Multiple Bill Hearing Transcript, 3/4/11; Multiple Bill, 9/17/10; Motion to Quash, 3/3/11.

4

On direct appeal, Williams's appointed counsel asserted that the multiple offender sentence was excessive.[7]   Williams filed a pro se supplemental brief asserting three errors:[8] (1) The evidence was insufficient to support the carjacking verdict because his mental state at the time of the offense prevented proof of intent. (2) The evidence was insufficient to support the carjacking verdict because the victim told him to take her car. (3) The cumulative effect of the errors before, during and after trial rendered the proceeding fundamentally unfair.

On February 28, 2012, the Louisiana Fifth Circuit affirmed Williams's convictions, multiple offender adjudication and sentence.   The court found that the evidence was sufficient to establish each of element of carjacking.[9]   The court held that Williams was barred from relying on a mental competency defense because he entered a "not guilty" plea before trial, and his voluntary intoxication was not a proper defense to the general intent crimes with which he was charged.   The court also found the sentence was not unconstitutionally excessive.[10]

---

[7]St. Rec. Vol. 3 of 4, Appeal Brief, 11-KH-0427, 5/31/11.

[8]St. Rec. Vol. 3 of 4, Supplemental Pro Se Brief, 11-KH-0427, 6/21/11; Motion for Leave, 11-KA-0427, 6/6/11; 5th Cir. Order, 11-KA-0427, 6/6/11.

[9]Williams, 88 So.3d at 1102; St. Rec. Vol. 4 of 4, 5th Cir. Opinion, 11-KA-427, 2/28/12.

[10]The appellate court also ordered the state trial court to advise Williams in writing about the correct delays for filing for post-conviction relief.   The state trial court complied on February 29, 2012. St. Rec. Vol. 2 of 4, Corrected Minute Entry, 2/29/12.

The Louisiana Supreme Court denied Williams's subsequent writ application without stated reasons on June 1, 2012.[11]  His convictions became final ninety (90) days later, on August 30, 2012, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On March 21, 2013, Williams submitted an application for post-conviction relief to the state trial court asserting that his counsel provided ineffective assistance when he failed to (1) investigate, interview and subpoena witnesses, (2) file a pretrial motion for severance of offenses, (3) challenge juror Darleen Battley for cause, (4) object to the admissibility of other crimes evidence, (5) object to the State's lack of foundation for admitting the other crimes evidence, (6) file a motion for a sanity hearing and (7) object or file a motion to reconsider the sentence.[12]  He also requested an evidentiary hearing to address his ineffective assistance of counsel claims and argued that his continued detention was unconstitutional and that he was prejudiced by the cumulative effect of counsel's errors.

---

[11]State v. Williams, 90 So.3d 437 (La. 2012); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2012-KO-0574, 6/1/12; La. S. Ct. Writ Application, 12-KO-0574, 3/12/12 (dated 3/7/12); St. Rec. Vol. 2 of 4, La. S. Ct. Letter, 2012-KO-574, 3/12/12 (showing postal meter 3/7/12).

[12]St. Rec. Vol. 2 of 4, Application for Post-Conviction Relief, 3/27/13 (dated 3/21/13).

After receiving a response from the State and supplemental briefing from Williams, the state trial court denied relief on August 6, 2013, including the request for an evidentiary hearing.[13]  Relying on <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) and related state law, the court found no merit in the first six arguments and found the seventh argument related to counsel's performance at sentencing procedurally improper under La. Code Crim. P. art. 930.3, and <u>State ex rel. Melinie v. State</u>, 665 So.2d 1172 (La. 1996), and <u>State v. Cotton</u>, 25 So.3d 1030 (La. 2010), each of which prohibits post-conviction review of sentencing errors, including those during habitual offender proceedings.  The court later denied further relief based on Williams's untimely traverse to the State's opposition filed after the court had decided his application.[14]

The Louisiana Fifth Circuit denied Williams's related writ application in its reasoned decision issued on October 29, 2013.  The court approved and supplemented the reasons given by the trial court.[15]  The Louisiana Supreme Court denied Williams's writ application without stated reasons on July 31, 2014.[16]

---

[13]St. Rec. Vol. 1 of 4, Trial Court Order, 8/6/13; State's Opposition, 7/18/13; St. Rec. Vol. 2 of 4, Supplemental Memorandum, 6/11/13; Trial Court Order, 5/29/13.

[14]St. Rec. Vol. 1 of 4, Trial Court Order, 10/1/13; Traverse, 8/14/13 (dated 8/8/13).

[15]St. Rec. Vol. 4 of 4, 5th Cir. Order, 13-KH-744, 10/29/13; 5th Cir. Writ Application, 13-KH-744, 9/5/13 (postmarked 9/3/13).

[16]<u>State ex rel. Williams v. State</u>, 146 So.3d 546 (La. 2014); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2013-KH-2702, 7/31/14; La. S. Ct. Writ Application, 13-KH-2702, 11/21/13 (dated 11/6/13).

II.     <u>FEDERAL HABEAS PETITION</u>

On September 15, 2014, the clerk of this court filed Williams's petition for federal habeas corpus relief asserting the following grounds for relief:[17] (1) The evidence was insufficient to support the conviction. (2) Counsel provided ineffective assistance when he failed to (a) investigate, interview and subpoena witnesses, (b) file a pretrial motion for severance of offenses, (c) challenge juror Darleen Battley for cause, (d) object to the admissibility of other crimes evidence, (e) object to the State's lack of foundation for admitting the other crimes evidence, (f) file a motion for a sanity hearing, and (g) file a motion to reconsider the sentence or object to the sentence. (3) He is entitled to an evidentiary hearing on the ineffective assistance of counsel claims. (4) His continued incarceration is unconstitutional based on the denial of effective assistance of counsel. (5) He was prejudiced by the cumulative effect of counsel's errors.

The State filed a response in opposition to Williams's petition conceding that the petition was timely and the claims exhausted.[18]   The State also argued that two of Williams's arguments are in procedural default and the remaining claims do not support federal habeas relief.

---

[17]Rec. Doc. No. 3.

[18]Rec. Doc. No. 10.

8

III.     GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

including 28 U.S.C. § 2254.   The AEDPA went into effect on April 24, 1996[19] and

applies to habeas petitions filed after that date.   Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).   The AEDPA therefore

applies to Williams's petition, which, for reasons discussed below, is deemed filed in this

court on August 14, 2014.[20]

The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether petitioner's claims were adjudicated on the merits in

state court; i.e., the petitioner must have exhausted state court remedies and must not be

in "procedural default" on a claim.   Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir.

---

[19]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[20]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Williams's petition was filed by the clerk of court on September 15, 2014, after correction of certain deficiencies and the granting of pauper status.  His signature on the petition is dated August 14, 2014. This is the earliest date appearing in the record on which he could have presented the pleadings to prison officials for mailing to a federal court.

1997) (citing 28 U.S.C. § 2254(b), (c)).  The State concedes and I find that the petition is timely and that state court review was exhausted.

The State urges, however, that the following two of Williams's ineffective assistance of counsel arguments are in procedural default: (1) counsel's failure to object to file a motion to reconsider the sentence, and (2) counsel's failure to move for a sanity hearing.  While there is no question that the state courts procedurally barred review of the sentencing-related argument, no state court barred review of the latter claim.

The State apparently misconstrues or seeks to expand the state courts' reasons for denial of relief on direct appeal to bar post-conviction review of Williams's claim that counsel was ineffective for failing to file a motion for a sanity hearing.  On direct appeal, the Louisiana Fifth Circuit held that Williams waived his right to urge a mental health defense when he proceeded to trial on a not guilty plea.  In addition, the defense was not available for him as to the charged general intent crimes.

The State now seeks to extend the appellate court's ruling, quoted in its opposition memorandum,[21] to bar review of Williams's related ineffective assistance of counsel claim asserted later on post-conviction review.  The Louisiana Fifth Circuit's opinion on direct appeal addressed a different issue: sufficiency of the evidence of his mental capacity as it impacted the element of intent.

---

[21]Rec. Doc. No. 10, pp. 17-18

When the court actually considered the alleged ineffective assistance of counsel for failure to move for a sanity hearing on post-conviction review, it addressed the claim on the merits under Strickland. The court's only reference to waiver of the mental health defense came in its reasons affirming the state trial court's denial of the request for an evidentiary hearing. The Louisiana Fifth Circuit reasoned that Williams's failure to establish a basis to question his competency, an issue already barred from review on direct appeal, left "no merit" to a claim that counsel was deficient in failing to urge the defense.[22] This was the court's second finding that the related ineffective assistance claim was meritless. At not point did the court impose a procedural bar to review of this part of Williams's ineffective assistance of counsel claim.

Instead, the record reflects that the claim of ineffective assistance of counsel for failure to move for a sanity hearing was denied on the merits at each level of the state courts. The state trial court denied the claim as meritless under Strickland, because Williams failed to establish that he had a mental incapacity at the time of the crime and showed no deficiency in counsel's performance. The Louisiana Fifth Circuit, also relying on Strickland, found the claim, among others, to be conclusory because Williams provided no proof of a mental disease or defect at the time of the crime that counsel might have pursued. The court also commented that this claim, among others, fell within

---

[22]St. Rec. Vol. 4 of 4, 5th Cir. Order, 13-KH-744, 10/29/13; Rec. Doc. No. 10, p. 20.

the ambit of counsel's sound trial strategy and that Williams had made no showing of deficient performance or prejudice. This last reasoned opinion clearly was not a procedural ruling, and the State's procedural default defense cannot be accepted.

I will address the State's assertion that the claim of ineffective assistance of counsel at sentencing is in procedural default before proceeding to review of the remaining claims.

## IV.   PROCEDURAL DEFAULT (CLAIM NO. 2(G))

Williams alleges that his counsel provided ineffective assistance when he failed to object to the sentence or file a motion to reconsider the sentence imposed at the multiple bill proceeding which prevented him from fully challenging the sentence on appeal. Williams asserted these claims in his state application for post-conviction relief. The state trial court found these claims procedurally improper and barred from consideration on post-conviction review under La. Code Crim. P. art. 930.3, State ex rel. Melinie and Cotton. The Louisiana Fifth Circuit agreed with the application of the procedural bar to review of these claims citing Cotton, and the Louisiana Supreme Court denied subsequent relief with no additional reasons.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

12

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.

A.      INDEPENDENT AND ADEQUATE

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial

of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. Walker v. Martin, 562 U.S. 307, __, 131 S. Ct. 1120, 1127 (2011); Glover, 128 F.3d at 902. A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citation omitted) Beard v. Kindler, 558 U.S. 53, 60-61 (2009). The question of the adequacy of a state procedural bar is itself a federal question. Beard, 558 U.S. at 60 (citing Lee v. Kemna, 534 U.S. 362, 375 (2002)).

The last reasoned decision on the issue was the judgment of the Louisiana Fifth Circuit affirming the state trial court's bar to post-conviction review citing Cotton, which expanded the bars under La. Code Crim. P. art. 930.3 and State ex rel. Melinie to performance of counsel at multiple offender proceedings. Louisiana law requires that such challenges be brought on direct appeal. Cotton, 45 So.3d at 1030; State v. Dauzart, 89 So.3d 1214, 1222 (La. App. 4th Cir. 2012) (ineffective assistance of counsel for failure to object to the failure to file the multiple bill into the record "must be addressed on appeal because sentencing errors are not reviewable post-conviction."); State v. Jones, 80 So.3d 500, 502 (La. App. 2d Cir. 2011) (same); see also, Wallace v. Cain, No. 06-

14

11271, 2009 WL 3367052 at *14 (E.D. La. Oct. 15, 2009) (same as to claim of ineffective assistance of counsel during habitual offender proceeding) (order adopting report).

This court has repeatedly held that Article 930.3 and the cited cases are independent and adequate state grounds for dismissal barring federal habeas corpus review. See, e.g., Johnson v. Cain, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (Lemelle, J.) (Article 930.3, State ex rel. Melinie and Cotton are independent and adequate); Evans v. Cain, No. 11-2584, 2012 WL 2565008, at *6-7 (E.D. La. Mar. 14, 2012), report adopted by, 2012 WL 2565001, at *1 (E.D. La. Jul. 2, 2012); Neal v. Kaylo, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (Article 930.3 and State ex rel. Melinie are independent and adequate); Leonard v. Hubert, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); Marshall v. Hubert, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same); Ardis v. Cain, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999) (Berrigan, J.) (same).  Similarly, I find that the bar imposed under Article 930.3, State ex rel. Melinie and Cotton, is an independent and adequate bar to review of the merits of Williams's claim that his counsel was ineffective in failing to object to or file a motion to reconsider his sentence.

The state courts' rulings were based on Louisiana law setting forth procedural requirements for the presentation of post-conviction claims.  See Fisher, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue).  The state courts' reasons for dismissal of Williams's claim were therefore independent of federal law and adequate to bar review of his claims in this court.

B.      CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Fisher, 169 F.3d at 301 (citing Coleman, 501 U.S. at 748-50); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Id., at 486.

In this case, Williams has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts. My review of the record does not support a finding that any factor external to the defense prevented Williams from raising these claims in a procedurally proper manner. The record reflects no action or inaction by the State which prevented him or his counsel from properly asserting these claims in the state courts.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902. To satisfy the factual

17

innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Williams presents no argument and the record contains nothing establishing his actual innocence on the underlying convictions. For these reasons, he has failed to overcome the procedural bar, and his claim of ineffective assistance of counsel for failure to object to or file a motion to reconsider his sentence must be dismissed with prejudice as procedurally barred.

V.     STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from

this Court's decisions but unreasonably applies that principle to the facts
of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be

applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause

if, and only if, it is so obvious that a clearly established rule applies to a given set of facts

that there could be no 'fairminded disagreement' on the question." (citation omitted)

White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v.

Richter, 562 U.S. 86, __, 131 S. Ct. 770, 787 (2011), and Knowles v. Mirzayance, 556

U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can

apply to the facts at hand,' then by definition the rationale was not 'clearly established

at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough

v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the state court decision applied [a Supreme

Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford

v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S.

685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only

question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner

to show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VI.    EVIDENTIARY HEARING (CLAIM NO. 3)

As part of his state post-conviction claims, Williams asserted that he was entitled

to an evidentiary hearing on his ineffective assistance of counsel claims.  The request was

denied by the state trial court, and no error was found in that ruling by the higher state

courts.  Williams lists his request for an evidentiary hearing as a claim in this federal

petition but does not provide any specific briefing related to it.[23]

To the extent Williams suggests that the state courts erred in denying his post-

conviction application without an evidentiary hearing, his argument would not entitle

him to federal habeas corpus review or relief.  It is well settled that "infirmities in State

habeas proceedings do not constitute grounds for relief in federal court."  Rudd v.

Johnson, 256 F.3d 317, 319 (5th Cir. 2001).  An attack on the state habeas proceeding

is an attack on a proceeding collateral to the detention and not the detention itself, which

is the issue to be addressed in federal habeas cases.  Id., at 320; Drevino v. Johnson, 168

F.3d 173, 180 (5th Cir. 1999); Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394,

---

[23]Rec. Doc. No. 3, p. 17 (Claim No. 8).

402-403 (2001) (no constitutional mandate that states provide post-conviction review)

(citing <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 557 (1987) (no constitutional right to state

post-conviction review)).

In addition, to whatever extent Williams may be requesting a federal evidentiary

hearing on his ineffective assistance claims, his request must be denied.  As discussed

by the Supreme Court in <u>Cullen v. Pinholster</u>, __ U.S. __, 131 S. Ct. 1388, 1400-01

(2011), the decision to hold an evidentiary hearing is a statutorily mandated

determination limited by the provisions of Section 2254(e)(2).  The statute restricts

evidentiary hearings to those instances in which the claim relies on a new rule of law

retroactively applied on collateral review for which the predicate could not have been

previously discovered with due diligence and the facts would be sufficient to undermine

a guilty verdict by clear and convincing evidence.  The <u>Cullen</u> Court recognized that

when these requirements are not met, evidence presented for the first time may not be

considered on federal habeas review to address the merits of the claims under Section

2254(d)(1).  <u>Id</u>.

Thus, this court is limited to review of the evidence and record that was before the

state courts that reviewed the merits of the claim at issue.  <u>Cullen</u>, 131 S. Ct. at 1400;

<u>Blue v. Thaler</u>, 665 F.3d 647, 656 (5th Cir. 2011); <u>Gallow v. Cooper</u>,  505 F. App'x 285,

295-96 (5th Cir. 2012); <u>Thomas v. Thaler</u>, No. 12-50280, 2013 WL 1297269, at *4-*5

(5th Cir. Apr. 2, 2013).   In this case, Williams has not based his claims on a new, retroactive rule of law under the provisions of Section 2254(e)(2).   He has made no showing of entitlement to relief from his conviction by clear and convincing evidence undermining his guilt.   For the reasons discussed below, he has failed to establish his entitlement to federal habeas relief.   Therefore, there is no basis for this court to grant an evidentiary hearing.

VII.   SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 1)

Williams contends that he suffered from a mental defect at the time of the crime which prevented him from formulating the intent necessary to commit the crime.   He focuses this argument, as he did in the state courts, on the carjacking offense.   He asserts that the testimony of the victim established that his behavior was strange and also established that she told him to take the car.

Williams's appointed counsel asserted these arguments on direct appeal to the Louisiana Fifth Circuit.   Relying on Jackson v. Virginia, 443 U.S. 307 (1979), and related state case law, the court found that the State proved each element of the offense of carjacking.   The court dismissed the allegation that the victim gave him the car, noting that she only did so out of fear for the safety of herself and her children.   The court also held that Williams was barred from raising a diminished mental capacity defense and otherwise waived the defense by his failure to assert it at trial.   In addition, the court

determined that carjacking was a general intent crime that would not be negated by a showing of voluntary intoxication or influence of drugs. This was the last reasoned opinion on the issue because the Louisiana Supreme Court summarily denied Williams's subsequent writ application.

Under Jackson, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Id., 443 U.S. at 319; Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011); Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those

24

determinations are the exclusive province of the jury.  United States v. Young, 107 F.

App'x 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th

Cir. 1993)); see Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts"). Thus, all credibility choices and

conflicting inferences must be resolved in favor of the verdict.  Ramirez v. Dretke, 398

F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the

evidence or its view of the credibility of witnesses in place of the fact-finder.  Weeks v.

Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598

(5th Cir. 1985).  In addition, "[t]he Jackson inquiry 'does not focus on whether the trier

of fact made the correct guilt or innocence determination, but rather whether it made a

rational decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th

Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  Perez,

529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this

court must examine whether the state courts' denial of relief was contrary to or an

unreasonable application of United States Supreme Court precedent.[24]

_____

[24]As argued by Williams, Louisiana law allows for a crime to be proven by both direct and
circumstantial evidence. "The rule as to circumstantial evidence is: assuming every fact to be proved that

Williams was charged and convicted with violation of La. Rev. Stat. § 14:64.2, which defines carjacking as the intentional taking of a motor vehicle that belongs to another person, in the presence of that person, a passenger or any other person in lawful possession of the motor vehicle, by the use of force or intimidation.  State v. Jagers, 786 So.2d 284, 288 n.2 (La. App. 2nd Cir. 2001); State v. Jones, 733 So.2d 127, 139 (La. App. 2nd Cir. 1999).  A "taking" in the commission of a carjacking "includes an intent to usurp or negate the owner's dominion."  State v. Bess, 47 So.3d 524, 529 (citing State v. Victor, 368 So.2d 711 (La. 1979)).  This requires consideration of "whether the offender exerts control over the object adverse to or usurpatory of the owner's dominion."  Id., at 529.

The Louisiana Fifth Circuit held in Williams's case that carjacking is a general criminal intent crime.  La. Rev. Stat. § 14:11 ("[I]n the absence of qualifying provisions, the terms 'intent' and 'intentional' have reference to 'general criminal intent.'");

---

the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438. However, on federal habeas corpus review, the court does not apply this state law "reasonable hypothesis" standard, and instead must apply Jackson. See Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992) (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." State v. Porretto, 468 So.2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." State v. Maxie, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So.2d at 208. The appropriate standard for this court remains Jackson as applied under the parameters of the AEDPA.

Williams, 88 So.3d at 1110.  Under Louisiana law, general criminal intent is present "when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."  La. Rev. Stat. § 14:10(2).  Determination of whether the requisite intent is present in a criminal case is exclusively for the trier of fact.  State v. Huizar, 414 So.2d 741 (La. 1982).

In the instant case, the jury heard testimony establishing that, around 9:30 p.m. on February 5, 2010, Stephanie Jefferson and her three children, Jala and Jarrell Hawkins and Stephen Jefferson, drove up to her parents' home at 112 Deacon Street.[25]  Stephanie and Stephen exited the car when they were approached by Williams, who asked to use Jefferson's cell phone.[26]  While trying to make a call, Williams followed Stephen and Stephanie to the door of the house.  He told Stephanie he wanted to speak to her brother, Ronnie.  When Stephanie told him Ronnie was not home, Williams began running around the car as if someone was chasing him.[27]  When he would not calm down,

---

[25]St. Rec. Vol. 3 of 4, Trial Transcript, p. 47 (Stephen), p. 61 (Stephanie), 8/31/10.

[26]Id., p. 49 (Stephen), p. 61 (Stephanie).

[27]Id., p. 50 (Stephen), p. 61 (Stephanie).

Stephanie and Stephen began walking back to the car out of fear for their safety and to keep Williams away from the house.[28]

When Stephanie got into the driver's seat, Williams got in with her with his legs straddling her and his back against the steering wheel. Williams began fighting with and choking Stephanie and trying to get control of the car.[29] Stephen tried to help his mother get away to no avail. Williams at one point fell across the seat on top of Jala, who was six years old at the time.[30] He continued to fight with Stephanie and regained his stance on top of her. By this point, Stephen had left the area of the car to call 911 from a neighbor's phone. At that point, Stephanie told Williams to just take the car, and he got off her long enough for her to get out of the car.[31] Jala was also able to get out of the car before Williams drove off.[32] Stephanie at that point did not know the whereabouts of Stephen or Jarrell.[33] Williams almost immediately crashed the car down the block.[34] Both Stephanie and Stephen testified that neither had ever given Williams permission to

---

[28]Id., p. 50 (Stephen), p. 62 (Stephanie).

[29]Id., pp. 50, 51 (Stephen), pp. 62-63 (Stephanie).

[30]Id., p. 51 (Stephen), p. 63 (Stephanie).

[31]Id., pp. 51, 55 (Stephen), p. 63 (Stephanie).

[32]Id., p. 51 (Stephen), p. 63 (Stephanie).

[33]Id., p. 64 (Stephanie).

[34]Id., pp. 51-52 (Stephen), p. 64 (Stephanie).

use Stephanie's car.  The only reason Stephanie told Williams to take the car was fear for the safety of her children and herself.

Based on the testimony before the jury, the evidence established that Williams followed Stephanie Jefferson to her car, used physical force by choking and fighting with her to gain control of the car, in which she was seated.  He did not leave the car until she acquiesced to his use of force and turned it over to him.  The evidence was wholly sufficient for a reasonable jury to find that Williams took Jefferson's car away from her control by use of repeated physical force.

Williams claims that he was unable to form the intent to commit a crime because he was under the influence of narcotics, as evidenced by his odd behavior.  It is well settled law in Louisiana that voluntary intoxication, which includes drug induced conditions, is a defense only in cases where specific intent is a necessary element of the crime.  La. Rev. Stat. § 14:15; State v. Martin, No. 2014-KA-0295, 2014 WL 4668768, at *2 (La. App. 1st Cir. Sep. 19, 2014) (citing State v. Boleyn, 328 So.2d 95, 98 (La. 1976)); State v. Cerda-Anima, 119 So.3d 751, 759 (La. App. 5th Cir. 2013).  As discussed above, carjacking is a general intent crime not subject to that defense and irrelevant to the jury's determination of guilty.

For the foregoing reasons, the evidence taken in a light most favorable to the prosecution was more than sufficient to establish each element of carjacking under

Louisiana law.  The state courts' denial of relief on this issue was not contrary to or an unreasonable application of <u>Jackson</u>.  Williams is not entitled to relief on this claim.

VIII.   <u>INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 2(A) - (F))</u>

Williams asserts that his counsel provided ineffective assistance in preparing for and presenting a defense at trial.  Six of the grounds in support of the claim remain for this court's review, after the procedurally defaulted claims are eliminated. As outlined above, the state courts denied post-conviction relief on each of these grounds based on Williams's failure to establish either prong of the <u>Strickland</u> test.

The standard for judging the performance of counsel was established by the United States Supreme Court in <u>Strickland</u>, 466 U.S. at 688, relied upon by the state courts, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  <u>Id</u>., 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  <u>Id</u>., at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>., at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 131 S. Ct. at 792 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom."  Harrington, 131 S. Ct. at 788.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's

actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under Section 2254(d) is "doubly deferential."  Cullen, 131 S. Ct. at 1403 (quoting Knowles, 556 U.S. at 123).  This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 690;  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  Strickland, 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore, 194 F.3d at 591.  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent set forth above.

A.   FAILURE TO INVESTIGATE, INTERVIEW AND SUBPOENA WITNESSES

Williams alleges that his counsel was ineffective for failing to investigate and call three witnesses, Larimore and Kendrick Speed and their father, who would have testified that the police did not find crack cocaine in his possession at the time of his arrest. Williams contends (as argued by counsel at trial) that if no cocaine was found during the pat-down search, the cocaine found in the police unit was not his.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown.  Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would

reasonably likely have been different."). To prevail on such a claim, petitioner must provide factual support showing what <u>exculpatory</u> evidence further investigation would have revealed. <u>Moawad</u>, 143 F.3d at 948; <u>Brown v. Dretke</u>, 419 F.3d 365, 375 (5th Cir. 2005); <u>Davis v. Cain</u>, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Williams in no way meets this standard. He has identified <u>no</u> <u>exculpatory</u> evidence that would have been discoverable through more pretrial investigation by counsel. As in the state courts, this argument is wholly conclusory and unsupported by the record.

The record confirms, however, that a large part of the defense to the possession charge presented by Williams's counsel was based on the fact that no cocaine was found on Williams when he was arrested. Counsel questioned the sheriff's deputies about the pat-down search conducted at the time of Williams's arrest before he was placed in the police unit. During counsel's cross-examination, Detective Goff testified that, although other personal items were seized from Williams, no cocaine was found during the pat-down search.[35] Counsel elicited the same response from Deputy Macaluso, who actually conducted the pat-down search.[36]

---

[35]St. Rec. Vol. 3 of 4, Trial Transcript, p. 26 (Detective Goff), 8/31/10.

[36]<u>Id</u>., p. 37 (Deputy Macaluso).

Thus, counsel clearly investigated and actually argued the possibility that the cocaine found in the police unit did not belong to Williams. Williams has not established what any further investigation by counsel would have disclosed that would have altered the verdict. Williams has not shown any error by his counsel that demonstrates a lack of preparation or constitutes deficient performance by counsel.

As for the failure to call the Speeds to testify, it is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008). To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray, 265 F. App'x at 298).

Assuming that the Speeds would have been willing to testify, their testimony on the deputies' failure to recover cocaine during the search would have been merely cumulative and repetitive of testimony already before the jury from the deputies. Counsel's decision not to call cumulative witnesses is a strategic one. In addition, the

failure to submit cumulative evidence or testimony generally does not amount to ineffective assistance of counsel.  Richards v. Quarterman, 566 F.3d 553, 569 (5th Cir. 2009); Coble v. Quarterman, 496 F.3d 430, 436 (5th Cir. 2007) ("Counsel's decision not to present cumulative testimony does not constitute ineffective assistance.") (citing Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984).

Williams has failed to establish that his counsel failed to investigate or present testimony related to the possession of cocaine charge or that his actions were deficient or prejudicial in any way.  The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Strickland.

B.    FAILURE TO FILE MOTION FOR SEVERANCE OF OFFENSES

Williams complains that his trial counsel failed to move for a severance of the offenses for trial.  He argues that the three charges did not require a common showing or proof of elements and, when presented together, allowed the jury to infer that he had a criminal predisposition and the State to prove the crimes without sufficient evidence of each.

Under Louisiana law, ". . . the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La. Code Crim. P. art. 61.  The prosecutor's decision appropriately to join criminal charges in a bill of information is not subject to objection

by the defense.  See State v. Brooks, 541 So.2d 801 (La. 1989) (citing La. Code Crim.

P. art. 61 as providing broad discretion to the district attorney in determining whether to

sever counts in an indictment); State v. Burnett, No. 2007-KA-2523, 2008 WL 2064975,

at *3-4 (La. App. 1st Cir. 2008) (unpublished) (the district attorney has the discretion to

prosecute offenses separately or in aggregate) (citing State v. Joles, 492 So.2d 490 (La.

1986)) (addressing joinder of theft counts).  Thus, unless Williams can show that the

charges were improperly joined, he fails to establish that his counsel erred in not moving

to sever the counts.

As discussed by the state courts on post-conviction review, Louisiana law provides

for joinder of criminal acts in one bill of information or indictment under certain

circumstances:

> Two or more offenses may be charged in the same indictment or
> information in a separate count for each offense if the offenses charged,
> whether felonies or misdemeanors, are of the same or similar character or
> are based on the same act or transaction or on two or more acts or
> transactions connected together or constituting parts of a common scheme
> or plan; provided that the offenses joined must be triable by the same mode
> of trial.

La. Code Crim. P. art. 493.

In addition, La. Code Crim. P. art. 493.2 permits joinder where "offenses in which

punishment is necessarily confinement at hard labor may be charged in the same

indictment or information with offenses in which the punishment may be confinement

at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."  La. Code Crim. P. art. 495.1, however, provides that "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."

In Williams's case, the Louisiana Fifth Circuit determined that the charges were properly joined in the bill of information under state law because the criminal acts were connected and constituted part of a common scheme or plan.  The court also determined that Williams failed to prove prejudice from the joinder for trial.  He has not shown any reason for his counsel to have moved for severance of the counts charged in the same bill of information.

In addition, there was no requirement under state law that any count be severed for purposes of trial.  Williams was charged with (and eventually convicted of) three felonies in the bill of information.  A felony, under Louisiana law, "is any crime for which the offender may be sentenced to death or imprisonment at hard labor."  La. Rev. Stat. § 14:2.  Felonies necessarily punished by confinement at hard labor are to be tried

by a twelve (12) person jury.  La. Code Crim. P. art. 782.  Other felonies which may be punished by confinement at hard labor are to be tried by a jury of six.  Id.

The carjacking charge, defined by La. Rev. Stat. § 14:64.2, shall be punished by imprisonment at hard labor and was triable by a jury of twelve (12).  See La. Code Crim. P. art. 782.  The charge of resisting arrest by use or threat of violence in violation of La. Rev. Stat. § 14:108.2, carries a potential sentence of imprisonment with or without hard labor.  Williams's third charge was possession of cocaine, a felony defined by La. Rev. Stat. § 40:967(C), which carries a sentence of imprisonment with or without hard labor.  The latter two felonies were triable by a jury of six under La. Code Crim. P. art. 782.

In spite of the provisions of Article 782, however, Louisiana law does not require severance and instead allowed for these charges to be tried together because of their close factual and transactional relationship.  Under Louisiana law, felonies that are necessarily punishable with confinement at hard labor, like carjacking, can be joined with offenses that may be punishable by confinement at hard labor, like resisting arrest and possession of cocaine, if the offenses are "of the same or similar character" or "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."  La. Code Crim. P. art. 493.  For these reasons, under Louisiana law, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood the jury will be

39

confused by the evidence of more than one crime." <u>State v. Lewis</u>, 557 So.2d 980, 984 (La. App. 4th Cir. 1990).  As determined by the state courts, each of Williams's offenses arose from the carjacking incident and his efforts to evade police scrutiny thereafter.  The evidence was presented in a clear manner for the jury to understand and evaluate the elements of each offense.

Having reviewed the record in its entirety, I find that Williams was not prejudiced simply because the offenses were tried together.  Each of the charges against him were felonies of similar character.  The facts of the offenses were not complex or confusing and were tied together through the common thread of Williams's activities in a single criminal episode.  The common set of facts, transaction or scheme included the carjacking and his subsequent detention and arrest.  As correctly determined by the Louisiana Fifth Circuit, there was no showing of undue prejudice that would have warranted or required severance under Louisiana law.

As such, Williams has shown no reason for his counsel to have moved the state trial court to sever the charges.  Counsel does not act deficiently in failing to urge a meritless argument.  <u>See</u> <u>Smith v. Puckett</u>, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); <u>Koch v. Puckett</u>, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").  There was nothing more

required of counsel.  See United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) (counsel's failure to file motion to suppress based on faulty search warrant affidavit was not deficient performance because counsel is not required "to file meritless motions").  Denial of relief on this issue was not contrary to or an unreasonable application of Strickland.

C.    FAILURE TO CHALLENGE JUROR FOR CAUSE

Williams asserts that counsel provided ineffective assistance when he failed to enter a challenge for cause against juror Darleen Battley, whom he claims had a friendship and relationship through employment with Stephanie Jefferson.  The state courts found Williams's claim conclusory because he provided no substantial proof that Battley had a relationship with Jefferson.

The Due Process Clause guarantees an accused the Sixth Amendment right to an impartial jury that will determine guilt based on the evidence and the law as instructed, rather than on preconceived notions or extraneous information.  Morgan v. Illinois, 504 U.S. 719, 727 (1992); Patton v. Yount, 467 U.S. 1025, 1037 & n.12 (1984).  In selecting a jury, "[t]he standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Soria v. Johnson, 207 F.3d 232, 242 (5th Cir. 2000) (quoting Wainwright v. Witt, 469

U.S. 412, 424 (1985)).  Review of this claim of ineffective assistance requires the court to consider whether there was a legitimate basis for counsel to have challenged the juror in question.

A juror is considered biased if he unequivocally states during voir dire that he cannot be fair and impartial.  Virgil v. Dretke, 446 F.3d 598, 613 (5th Cir. 2006). Pursuant to La. Code Crim. P. art. 797, however, a juror may be challenged for cause if, among other things, the juror is "not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence."

Williams has presented no evidentiary support for his suggestion that Battley had voiced an opinion or that she had a relationship with Jefferson.  As was true on post-conviction review in the state courts, the record before me does not contain the voir dire examination of the jury.  Williams has submitted no proof to substantiate his claim that Battley had a preconceived notion of his guilt and, if one was shown, that she was not properly rehabilitated in a manner to satisfy the state trial court that she could impartially serve.[37]  My review is limited to the same record that was before the state courts, Cullen,

---

[37]"A potential juror may be rehabilitated by counsel or the court; if it becomes apparent that the juror could follow the law in accordance with his oath and the court's instructions, denial of a challenge for cause would be proper, and the challenged venireman could serve on the jury." Chappell v. Cockrell, 37 F. App'x 88, 2002 WL 971530, at *11 (5th Cir. Apr. 29, 2002).  The United States Supreme Court has made clear that, when determining impartiality or rehabilitating a juror, "deference must be paid to

131 S. Ct. at 1400, and the record contains no basis establishing that counsel had any cause to challenge Battley as a juror.

Without some showing that counsel had a reason to assert a cause challenge against Battley, Williams has failed to establish that counsel's actions were deficient or prejudicial. As noted by the state courts, it is well settled that conclusory allegations are not adequate to establish ineffective assistance of counsel. See Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); Brown, 419 F.3d at 375; Moawad, 143 F.3d at 948; United States v. Daniels, No. 08-104, 2011 WL 999529, at *7 (E.D. La. Mar. 18, 2011) (citing Moawad, 143 F.3d at 948; Brown, 419 F.3d at 375; and Kron v. Tanner, No. 09-7572, 2010 WL 3488227, at *11 n.26 (E.D. La. May 4, 2010)). The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Strickland.

D. & E.     FAILURE TO OBJECT TO OTHER CRIMES EVIDENCE

Williams alleges that his counsel was ineffective when he failed to object to the admissibility of and the State's lack of foundation for admitting other crimes evidence during trial. In addition to finding his claim merely conclusory, the Louisiana Fifth Circuit found that Williams was not challenging the admission of "other crimes

---

the trial judge who sees and hears the juror." Wainwright, 469 U.S. at 426.

evidence." Instead, his claim referenced his own testimony about his prior convictions elicited by the State during his cross-examination at trial pursuant to La. Code Crim. P. art. 609.1(A).

Louisiana law provides that "every witness," including a defendant, who testifies subjects himself to questioning about prior criminal convictions when his credibility is at issue. La. Code Crim. P. art. 609.1(A), (B); State v. Battie, 735 So.2d 844, 853 (La. App. 5th Cir. 1999). The record reflects that Williams testified on his own behalf at trial.[38] On cross-examination, the prosecutor questioned him about his prior convictions for possession with intent to distribute cocaine and injuring public records.[39]

Counsel therefore was not required to make a futile objection to the State's questioning when Williams himself testified at trial and his credibility clearly was at issue. See Marler v. Blackburn, 777 F.2d 1007, 1009-10 (5th Cir. 1985) (evidence of evidence petitioner's valid prior convictions was admissible under Louisiana law and objection by counsel would have been futile). Counsel's failure to object to the State's cross-examination and disclosure of Williams's prior convictions, which would have been erroneous as a matter of law, was not error or deficient performance. The state

---

[38]St. Rec. Vol. 3 of 4, Trial Transcript, p. 68, 8/31/10.

[39]Id., pp. 75-

courts' denial of relief on this issue was not contrary to or an unreasonable application of <u>Strickland</u>.

F.   <u>FAILURE TO FILE A MOTION FOR A SANITY HEARING</u>

Williams asserts that his counsel erred in failing to assert the issue of Williams's "induced psychosis" at the time of the offenses.  He argues that the evidence, including the witnesses statements, showed that he was not in his right mind and was unable to form the necessary intent to commit the crimes.

Under Louisiana law, "[c]riminal responsibility is not negated merely by the existence of a mental disease or defect . . .."  <u>State v. Williams</u>, 346 So.2d 181, 186 (La. 1977).  A mental disease or disorder short of legal insanity is insufficient to support an insanity defense.  <u>Id</u>.; <u>see also</u>, <u>State v. Koon</u>, 704 So.2d 756, 768 (La. 1997); <u>State v. Weber</u>, 364 So.2d 952, 956 (La. 1978).  In addition, as previously discussed, Louisiana law recognizes voluntary intoxication by drug use as a defense only to a specific intent crime.  La. Rev. Stat. § 14:15.

Under these guidelines, counsel had no legal basis to request a hearing or present a defense based on Williams's voluntary intoxication at the time of the offense.  As discussed above, carjacking is a general intent crime.  In addition, possession of cocaine under La. Rev. Stat. § 40:967(C) is a general intent crime.  <u>State v. Merrill</u>, 105 So.3d 264, 270 (La. App. 5th Cir. 2012).  As the Louisiana Fifth Circuit held, the charge of

resisting a police officer with force or violence under La. Rev. Stat. § 14:108.2 uses the unqualified word "intentionally;" thus, it requires no showing of a specific intent. <u>Williams</u>, 88 So.3d at 1111; La. Rev. Stat. § 14:11.

All of the charges against Williams were general intent crimes and <u>not</u> subject to a defense based on his drug induced state.  Williams's counsel had no reason to assert a defense <u>not</u> allowed under Louisiana law.  His failure to do so was not deficient performance or outside of reasonable trial strategy.  The state court's denial of relief was not contrary to or an unreasonable application of <u>Strickland</u>.  For all of the foregoing reasons, Williams is not entitled to relief on this or any of the foregoing grounds asserting ineffective assistance of counsel.

## IX.   CONTINUED INCARCERATION AND CUMULATIVE ERROR (CLAIMS NOS. 4&5)

Williams alleges that his continued incarceration is unconstitutional because he was without effective assistance of counsel.  He cites the insufficiency of the evidence and the ineffective assistance of counsel as reasons for this court to find that he should be released or retried on general due process principles.  In addition, he argues that the cumulative effect of the errors by his counsel also contributed to the overall unfairness of his criminal proceedings.

Due process standards require this court to consider "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the

procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, __, 131 S. Ct. 859, 861 (2011) (citing Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).  Due process requires, therefore, that the court grant habeas relief only when the errors of the state court make the underlying proceeding fundamentally unfair.  Neyland v. Blackburn, 785 F.2d 1283 (5th Cir. 1989).

The Supreme Court has recognized that under due process considerations, the cumulative effect of errors, though not individually worthy, could be collectively significant.  Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).  In considering a claim of cumulative error, the doctrine "provides relief only when the constitutional errors committed in the state trial court so fatally infected the trial that they violated the trial's fundamental fairness."  (internal quotations omitted) Carty v. Quarterman, 345 F. App'x 897, 909 (5th Cir. 2009) (quoting Spence v. Johnson, 80 F.3d 989, 1000 (5th Cir. 1996)).  To provide relief on federal habeas review, cumulative errors must have "more likely than not caused a suspect verdict."  Carty, 345 F. App'x at 909.

For the reasons discussed in this report, Williams has identified no constitutional error or violation arising from the state criminal proceedings or the state court rulings on his various claims, including the sufficiency of the evidence.  Without some showing of a constitutional error, there can be no deleterious cumulative effect for this court to consider.  Turner v. Quarterman, 481 F.3d 292, 301 (5th Cir. 2007) (". . . where

individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'"); Martinez-Perez v. Dretke, 172 F. App'x 76, 83 (5th Cir. 2006) ("Obviously, if there was no error . . . there was no cumulative error." (emphasis in original)); see also United States v. Fields, 761 F.3d 443, 483 (5th Cir. 2014) (where no error by lower court was established, there was no cumulative error).

The same is true with regard to his suggestion of cumulative error by counsel. He has shown no errors, much less errors that can be considered to have created a prejudicial effect. See Turner, 481 F.3d at 301 (citing Derden v. McNeel, 978 F.2d 1453, 1454, 1461 (5th Cir. 1992) (meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised)). When individual contentions of ineffective assistance are meritless, that result cannot be changed simply by asserting the same claims collectively. "[I]neffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006) (citing Miller, 200 F.3d at 286 n.6); Sholes v. Cain, 370 F. App'x 531, 535 (5th Cir. 2010); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) (with respect to cumulation of meritless claims, "Twenty times zero equals zero.").

The state courts' denial of relief on these issues was not contrary to or an unreasonable application of federal law. Williams is not entitled to relief on these claims.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Williams's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[40]

New Orleans, Louisiana, this _____5th_____ day of March, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[40]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

49